(No. 78-CC-2305–

WALTER F. SASS, Claimant, v. THE STATE OF ILLINOIS, Respondent.

*Opinion filed February 27, 1984.*

RICHARD L. COOPER, for Claimant.

Neil F. Hartigan, Attorney General (Glen P. Larner, Assistant Attorney General, of counsel), for Respondent.

Poch, J.

Claimant has filed a two-count complaint against the State of Illinois to quiet title and for a writ of possession to land over which the State had purchased an easement for highway purposes in 1932.

The history of the case is as follows:

In 1976 Claimant filed a complaint in the Circuit Court for the 16th Judicial Circuit, Kane County, Illinois, against Langhorn Bond, then Secretary of the Department of Transportation of the State of Illinois. The action purported to be against Langhorn Bond personally and asked for the same relief as is asked for in the case now pending in this Court, *viz.*:

*Count I*

"Wherefore, Plaintiff prays as follows:

1. That Plaintiff's title to the real estate hereinbefore described may be quieted, established and confirmed by Decree of this Court.

2. That the above-named Defendant, his successors and assigns, and all persons claiming or hereafter claiming any interest in said premises, by,

through or under him or his successors and assigns, be barred and forever precluded from asserting or claiming any interest, right to title in or to said premises, or any part thereof, adverse to the Plaintiff or his title hereto.

3. That the Plaintiff may have such other or further relief or different relief as the Court may deem just, and

4. For his costs."

## Count II

"Wherefore, Plaintiff prays judgment for the possession of said premises."

The language of paragraphs 4 through 12 of Count I of the instant complaint is identical to the language of paragraphs 1 through 9, Count I, of the circuit court complaint, and the language of paragraphs 1 through 3 of Count II of the instant complaint is identical with the language of paragraphs 1 through 3, Count II, of the circuit court complaint.

In the circuit court proceedings the Attorney General argued that the suit was in fact a suit against the State of Illinois, and that the circuit court had no jurisdiction to hear it.

The circuit court ruled in favor of Claimant with respect to the legal and factual issues, and the Attorney General appealed to the supreme court of Illinois.

The supreme court in *Sass v. Kramer* (1978), 72 Ill. 2d 485, 381 N.E.2d 975, held that the action, although nominally against an officer of the State of Illinois personally, was in fact an action against the State, that the circuit court had no jurisdiction to hear it, and that the proper forum was the Court of Claims of the State of Illinois. Justice Moran wrote a dissenting opinion.

The parties have stipulated that no hearing of this case need be held before a commissioner of this Court, that the trial record of the trial in the Kane County Circuit Court shall serve as the trial record in this case, and that the briefs filed by the parties in the supreme court of Illinois shall serve as the briefs in this cause.

## The facts are as follows:

On August 10, 1932, Michael Hays and Thomas E. Katon executed a dedication of right of way for public road purposes over approximately 12.195 acres situated in Kane and McHenry Counties, Illinois, in favor of "The People of the State of Illinois". The dedication recited that the land was dedicated to the people of the State of Illinois "for the purpose of a public highway". The State of Illinois paid Hayes and Katon $6,500.00 cash and other valuable consideration for the easement. Pursuant to this dedication, the State constructed a highway bypass connecting U.S. Route 20 and Illinois Route 47 in Kane County, Illinois, over a portion of the dedicated property. The property upon which the bypass was constructed, 1.307 acres, is the subject property of this appeal.

In 1957, Claimant, Walter F. Sass, purchased certain real estate in Kane County, Illinois, including the fee simple title to the property upon which the bypass was constructed pursuant to the dedication by Hayes and Katon. At the time of Sass' purchase, he was aware that the property in question was burdened by an easement in favor of the people of the State of Illinois for public highway purposes, having been so advised by Chicago Title and Trust Company.

Subsequent to Sass' purchase of the property, the Department of Transportation (successor to the Department of Public Works and Buildings, hereinafter Department), the department of State government charged with construction and supervision of State highways, determined it to be in the public interest to realign the intersection of Routes 47 and 20 in Kane County. As a result of the realignment, the bypass constructed on the easement in question was no longer presently necessary.

In approximately 1974, Sass indicated to the Department his desire to acquire the State's easement interest in the property. When a negotiated settlement could not be reached, Sass approached an Illinois State representative and had a bill introduced into and enacted by the legislature (P.A. 79-1020) providing for release of the State's easement upon payment of the fair appraised value for the State's interest. In accordance with the terms of the Act, passage of which was initiated by Sass, the Department had the property appraised and wrote Sass informing him of the fair appraised value of the easement and requesting payment. Sass refused to pay the appraised value. As a result of Sass' refusal to pay the fair appraised value, the condition precedent to vacation of the State's easement contained in P.A. 79-1020 has not been fulfilled.

In September, 1976, Sass filed suit in the Circuit Court of Kane County seeking to quiet title to the property burdened by the easement and for a writ of possession. The only defendant was Langhorn Bond, then Secretary of the Department. (Prior to trial, John Kramer, Bond's successor, was substituted as the sole defendant). No relief was sought against the defendant individually. The attorney representing Bond filed a motion to dismiss, alleging that the Circuit Court of Kane County was without jurisdiction to hear the case by virtue of the Sovereign Immunity Act (Ill. Rev. Stat. 1975, ch. 127, par. 801).

Defendant's motion was denied. Defendant then filed an answer and affirmative defense again raising the issue of sovereign immunity.

John Cullian, employed by the Department as right-of-way engineer, was called by Sass pursuant to section 60 of the Civil Practice Act. (Ill. Rev. Stat. 1979, ch. 110, par. 60; now Ill. Rev. Stat. 1983, ch. 110, par. 2—1102.) Cullian testified that the bypass road was not currently being used for a highway, but that the Department had not foreclosed its future use for highway purposes.

Evidence was introduced on Kramer's behalf that the fair appraised value of the property, pursuant to P.A. 79-1020, was $4,575.00. There was no dispute that Sass has not paid the sum required by P.A. 79-1020 in order to vacate the easement.

On September 7, 1977, the trial judge, ruling in favor of Sass, issued an order quieting title in Sass, extinguishing the rights of the people of the State of Illinois in the easement, holding P.A. 79-1020 unconstitutional, and issuing a writ of possession in favor of Sass for the property, the writ being stayed pending appeal to the Illinois Supreme Court.

As summarized by Claimant in his brief filed in the supreme court, the trial court's order found that:

"1. Fee simple title to the property in question is in the Plaintiff and for many years was subject to an easement for highway purposes and so used.

2. The easement was physically abandoned in recent years and that the House Bill above-mentioned confirmed the abandonment.

3. The property is in a rural area.

4. The Defendant Secretary has refused to deliver possession of the property to the Plaintiff until he pays a sum of money to the State, declared by its appraiser to be the value of the property.

5. The said House Bill is unconstitutional and void in that it deprives the Plaintiff of his property without due process of law, and, further, that the Bill is special legislation with respect to a subject covered by a general statute of the State."

Brief of Plaintiff-<br>Appellee 2, 3.

Findings Nos. 1, 3, and 4 above are not disputed by the parties, and since the parties have adopted the trial record in the circuit court as the trial record before this Court it would appear that there remain two issues before this Court:

I. Whether House Bill 2376 (P.A. 79-1020) is a constitutional enactment of the General Assembly.

II. Whether the easement for highway purposes was in fact at some time physically abandoned by the State of Illinois.

## DISCUSSION

### I. Is P.A. 79-1020 unconstitutional?

Unfortunately for Claimant, this Court has no power whatsoever to pass upon the constitutionality or legality of an act of the State legislature. Regardless of how crucial the issue may be to Claimant's case this Court has no power to decide it.

In *Gossar v. State* (1961), 24 Ill. Ct. Cl. 183, this Court came to grips with the question of whether it had the power to pass upon the constitutionality of acts of the legislature, and in an opinion, the logic of which cannot be questioned, came to the conclusion that it had no such power. In *Gossar*, a majority of the Court first wrote an opinion upholding the constitutionality of sections 22—1 and 22—2 of the Court of Claims Act (Ill. Rev. Stat., ch. 37, pars. 439.22—1, 439.22—2), these two sections having been enacted by House Bill No. 552 of the 70th General Assembly of the State of Illinois. Justice Wham wrote a minority opinion finding House Bill No. 552 unconstitutional. On rehearing, the entire Court expunged both opinions from the record and wrote a final opinion in which it held that this Court cannot pass upon such a question.

While considered in its most narrow aspect the question before the Court was whether it could pass upon the constitutionality of any of the provisions of the Court of Claims Act as enacted by the legislature, the Court in its opinion addressed the question of its power to pass upon acts of the legislature generally.

"The petition for rehearing has reopened this case for the consideration by the Court, and, although the petition limits the inquiry to the matters therein contained, the Court, on its own motion and before turning to the petition, believes that *it must resolve the question of its jurisdiction to approve or strike down an act of the Legislature.*" *Gossar v. State* (1961), 24 Ill. Ct. Cl. 183, 193. (Emphasis added.)

The Court outlines the history of claims against the sovereign in Illinois commencing with the first act making possible such relief passed by the legislature in 1819 and bringing the discussion up through 1961, concluding that the present Court of Claims, although called a court, is not a constitutional court.

"If then it be admitted that the Court of Claims is in fact a commission or fact finding body for the convenience of the Legislature in sifting out and reporting back to the Legislature meritorious claims, so that, in turn, the Legislature may make the necessary appropriations, then it is crystal clear that any opinion of this Court purporting to find House Bill No. 522 either constitutional or unconstitutional would be in complete violation of Article III and Article VI, Section 1, of the Constitution." *Gossar v. State* (1961), 24 Ill. Ct. Cl. 183, 196.

The portions of the 1870 Constitution referred to in the quotation above are now article II and article V, section 1, respectively, of the Constitution of 1970.

Continuing, the Court states:

"When the Court of Claims hears and determines the merits of a claim, and thereafter files its report with the Legislature, it is clearly exercising a quasi-judicial function.

When it is called upon to pass on the constitutionality of an act of the Legislature, it is manifestly clear that it is attempting to perform a judicial function of the highest order, and, being a commission of the Legislature, rather than a component part of the judicial department, it would violate Article VI, Section 1 of the Constitution." *Gossar v. State* (1961), 24 Ill. Ct. Cl. 183, 197.

We are thus forced to the conclusion that since this Court cannot pass upon the constitutionality of P.A. 79-1020, and since the supreme court has held that under the circumstances of the case then before it, it could not do so either, P.A. 79-1020 remains a valid enactment of the

General Assembly and Claimant is subject to its provisions.

II. Was the easement abandoned by the State prior to enactment of P.A. 79-1020?

A puzzling facet of the case still remains unsolved. Judge Puklin of the Kane County Circuit Court found that the State had in fact abandoned the easement prior to the enactment of P.A. 79-1020. If such is true could it be argued that — apart from questions of constitutionality — the Act at the time of its enactment was moot and of no effect, a nullity? In other words, if the State no longer had any interest in the real estate, there would be no foundation for a statute providing that the State would surrender the real estate upon payment for the same, and the statute, therefore, would be of no effect. To ask this Court to make such a finding is again to ask it to pass upon the validity of an act of the General Assembly. It would seem that for this Court to determine that an act of the General Assembly is invalid for whatever reason is beyond its powers.

Finally, while the evidence in the trial court record establishes nonuse of the easement by the preponderance of the evidence, in the opinion of the undersigned the record does not necessarily establish by the preponderance of the evidence the required abandonment.

As put by Respondent in its brief in the supreme court:

"Abandonment, which may also serve to extinguish a written easement, implies an intentional relinquishment of ownership, possession, or control of property without regard to future possession, 1 C.J.S. Abandonment, Section 1. Thus, there are two requisites to a finding of abandonment: an intent and an external act. Mere nonuse of the property is not in itself sufficient to prove abandonment.

'The question of abandonment is one of intent to be determined from the evidence and there is no abandonment unless the premises

are left with an intention of not again resuming possession.' *Burns v. Curran*, 275 Ill. 448, 453 (1916).

The record clearly indicates that the State of Illinois had no intention to abandon its rights and had not abandoned or released its rights to this easement. Thus, one necessary prerequisite to abandonment was lacking.

John Cullian, the right-of-way engineer for the Department, testified as follows:

'The Department claims that they have a right by way of dedication which was entered into evidence here, for the use of this property for highway purposes. They shall retain that right until they release it . . . . It's not being used. It's possible at some future date they will change the intersection again and use it.'

He further testified:

'Q. The Department's position is until the appraised value is paid it is still the State's highway?

A. That is correct . . . .'

'Q. Is that your position?

A. Yes.' "

> Brief for Defendant-
> Appellant 20, 21.

For the reasons stated above, it is our decision that this claim must be, and hereby is, denied.