25

(No. 81-CC-1746– )

TOLEDO, PEORIA & WESTERN R.R. CO., Claimant, *v.*
THE STATE OF ILLINOIS, Respondent.

*Opinion filed August 25, 1994.*
*Order filed August 17, 1995.*

KAVANAGH, SCULLY, SUDOW, WHITE & FREDERICK,
P.C. (JULIAN CANNELL, of counsel), for Claimant.

JIM RYAN, Attorney General (MICHAEL TAYLOR, Assistant Attorney General, of counsel), for Respondent.

OPINION

FREDERICK, J.

Claimant, Toledo, Peoria & Western Railroad Company,

a corporation, filed its claim in the Court of Claims on February 13, 1981. The complaint, sounding in tort, sought an accounting for rents and profits from the Respondent's commercial use of part of Lot J. Lot J is a parcel of land upon which Respondent had obtained an easement from Claimant for highway purposes.

The Claimant filed an amended complaint on October 3, 1984, which additionally prayed for a declaratory judgment that the State's interest in Lot J had been extinguished by operation of law. In the alternative, count II prays for damages against Respondent for the wrongful taking of the railroad's fee interest in Lot J.

The parties agreed that the common law report of proceedings before the United States District Court, submitted by the Claimant, would be the only evidence considered by the Court of Claims in deciding this case.

The case was originally filed by Claimant in the tenth judicial circuit of the State of Illinois. That cause was dismissed on jurisdictional grounds. The Claimant then filed a civil rights action under title 42 U.S.C. Sec. 1983 against the Illinois Department of Transportation in the United States District Court for the Central District of Illinois. The district court found in favor of Claimant on the issue of abandonment. However, the United States Appellate Court, Seventh Circuit reversed the judgment on the grounds that the district court lacked subject matter jurisdiction over the suit. The Seventh Circuit held that the availability of a remedy in the Illinois Court of Claims satisfied the requirements of the fifth and fourteenth amendments. The Claimant then proceeded in this Court.

Preliminarily, we find that the Illinois Court of Claims does have jurisdiction to decide this case. This Court has

found jurisdiction in numerous cases involving declaratory judgments, title to land, and damages related to land. (*Ross v. State* (1990), 43 Ill. Ct. Cl. 20 (damages related to potential acquisition of land); *Gordon v. State* (1991), 43 Ill. Ct. Cl. 146 (determination of ownership of property-adverse possession); *Bohne v. State* (1979), 33 Ill. Ct. Cl. 181 (resale of land after condemnation); *Hicks v. State* (1978), 32 Ill. Ct. Cl. 529 (reformation of deed); *Orr Construction v. State* (1975), 30 Ill. Ct. Cl. 266 (declaratory relief).) While the complaint states the Respondent is the Department of Transportation, State of Illinois, the State of Illinois is the true party in interest as the decision required affects directly the property of the State over which the Court of Claims has exclusive jurisdiction. *Sass v. Kramer* (1978), 72 Ill. 2d 485. *Gordon v. Department of Transportation* (1982), 109 Ill. App. 3d 1071.

### The Facts

The facts have for the most part been agreed to by the parties. The dispute concerns a piece of land hereinafter referred to as "Lot J."

Lot J is a 3.38 acre triangular lot fronting on Camp Street in East Peoria, Illinois. In 1956, Claimant conveyed an easement for highway purposes to all of Lot J to the State of Illinois for $6,000. Pursuant to the construction of Interstate Highway I-74, the eastern tip of the triangular lot was used as road bed for the relocation of Camp Street. At the time the State acquired its easement in Lot J, the land's contour was a steeply sloped hillside. The toe of the slope was adjacent to Camp Street and was supported in part by a concrete retaining wall. Between 1956 and 1963, both the State and the Claimant removed materials from Lot J. The lot's present topography, which was created by the parties' removal of materials, is relatively level with an approximate 9% grade running from

the toe of the Fondulac Street abutment toward Camp Street.

The Claimant pursued negotiations with the State for the release of the State's easement in Lot J beginning in 1963, except for the .25 acre triangle used as a road bed for the relocation of Camp Street. In February, 1965, the State prepared a plat of vacation for part of Lot J which reserved access to the toe of the Fondulac Drive abutment and additional right-of-way along Camp Street. The vacation plat was designated "preliminary" and "proposed for land trade," and includes 2.05 acres of the original 3.38 acres dedicated to the State. Claimant's witnesses testified that the possibility of a land trade for Lot J had been discussed with State personnel. Mr. John Harland, the State's district engineer, testified that the preparation of a vacation plat is a preliminary step to determine the boundaries of land which might be vacated. It is not a significant step in the decision of whether to dispose of land. At no time did Mr. Harland recommend that the department dispose of Lot J.

On January 13, 1970, the Claimant wrote the State's district engineer inquiring about the possibility of trading railroad lands needed for Route 474 for Lot J. On January 20, 1970, the district engineer responded by letter that the State "will have valuation appraisals prepared and will be in contact with you concerning a possible trade of properties as mentioned in your letter." On June 9, 1970, the district engineer advised the Claimant that "there is no current basis for disposing of Lot J since the City of East Peoria and the State are now studying several alternate locations for relocation of Main Street, East Peoria."

On June 30, 1977, the State entered into a rental agreement for part of Lot J with the adjoining motel owner, Best Inns. Under the terms of their agreement,

the State received $50 a month and the tenant was authorized to improve the parking lot with gravel and was given access to Camp Street. On January 24, 1980, representatives of the Claimant met with the district engineer in his office. The purpose of the meeting was to discuss lifting of the easement from Lot J. At the meeting, the State agreed to prepare a boundary survey of Lot J, and then to discuss the possibility of releasing the easement once the boundaries had been established. On June 9, 1980, there was a second meeting at Lot J. The district engineer stated at this meeting that it would be necessary to continue an easement along the northern boundary of Lot J for access to the Fondulac Drive abutment and that the State would develop the appraisal of the property and provide a survey so that they could proceed with the vacation. During the month of June, 1980, the State prepared a second vacation plat reserving access to the Fondulac Drive abutment. The State also prepared a legal description of the area to be vacated, which included 2.708 acres of the original 3.38 acres that had been dedicated in 1956. By letter dated July 21, 1980, the Claimant was notified that the amount of the State's appraisal for the 2.708 acres to be vacated was $206,400 which was the full market value of the fee interest. The Claimant refused to pay the appraised amount and the litigation began.

## The Law

There are two issues before the Court. The first issue is whether the Respondent has abandoned the easement and the second issue is whether the Respondent has misused the easement.

The Respondent takes the position that the State cannot ever abandon an easement under any circumstances. However, Respondent cites the Court to no authority directly on point. The State asks us to liken an

abandonment to adverse possession. Adverse possession will not lie against a public entity regarding the dedication of streets and highways for use of the public. (*Russell v. City of Lincoln* (1902), 200 Ill. 511.) The argument propounded by the State is that, because a party cannot adversely possess the lands of the State because the State cannot be held to watch over all of its property, the State cannot therefore be held to abandon property. We reject this argument and find that under proper circumstances where abandonment is proven as a matter of fact, the State can abandon an easement.

The evidence is clear that the Claimant owned Lot J. The instrument of conveyance granted the State an easement for highway purposes. The easement terminates upon abandonment of such use and the land would revert to Claimant. (*Schwabel v. County of DuPage* (1981), 101 Ill. App. 3d 553.) Mere non-use of an easement acquired by grant does not of itself alone constitute an abandonment and therefore an extinguishment of the easement. (*Beloit Foundry Co. v. Ryan* (1963), 28 Ill. 2d 379; *Chicago Title & Trust v. Wabash-Randolph Corp.* (1943), 384 Ill. 78; *Pacemaker Food Stores v. Service Mont. Corp.* (1983), 117 Ill. App. 3d 636.) To constitute abandonment of an easement created by a grant, there must be non-use and an intention of the owner of the easement to abandon the easement. (*Kurz v. Blume* (1950), 407 Ill. 383.) An easement which has lain dormant through non-use without intentional abandonment thereof may be revived at a later date. *Finn v. Williams* (1944), 376 Ill. 95.

Claimant has the burden of proving that the easement has been abandoned. (*Burnette v. DeWitt* (1935), 360 Ill. 518.) The Claimant conveyed an easement to the people of the State of Illinois for the purposes of a public highway. The instrument indicates no time limit and is

therefore perpetual. As the easement is perpetual, it is not affected by non-use. The intent to abandon must be clearly proven for Claimant to prevail. Lot J has not been used as a public highway since 1956. The Respondent claims the land may be used as a public highway in the future. The Respondent also claims Lot J is needed for lateral support or drainage to an existing highway. The Department of Transportation did prepare a vacation plat proposing to release over two acres of the property but reserving the toe of the slope and access to Camp Street to the State. The State, in 1977, leased a substantial part of Lot J as a motel parking lot. The State considered vacating Lot J when it prepared its vacation plat. However, the district engineer testified that the preparation of a vacation plat is a preliminary step and at no time did he recommend the disposal of Lot J. There was considerable talk about a land trade but all of these discussions were limited to possibilities.

The Court of Claims has had occasion to determine if an easement for highway purposes has been abandoned by the State. (*Sass v. State* (1984), 36 Ill. Ct. Cl. 111.) In that case, a highway easement was obtained in 1932. Subsequent to 1957, the highway was moved and the easement at issue was no longer used or necessary. In 1974, the plaintiff sought to acquire the State's easement but a negotiated settlement could not be reached. A bill was passed in the legislature to release the State's easement upon payment by plaintiff of the fair appraised value of the State's interest. Plaintiff refused to pay the fair appraised value and he filed suit to have the easement declared abandoned. This court, citing Respondent's brief with approval, denied the claim because:

"Abandonment which may also serve to extinguish a written easement implies an intentional relinquishment of ownership, possession or control of the property without regard to future possession. 1 C.J.S. Abandonment, Section

1. Thus there are two requirements to a finding of abandonment: an intent and an external act. Mere non-use of the property is not in itself sufficient to prove abandonment. The question of abandonment is one of intent to be determined from the evidence and there is no abandonment unless the premises were left with an intention of not again resuming possession. (*Burns v. Curran* (1916), 275 Ill. 448.) The record clearly indicates that the State of Illinois had no intention to abandon its rights and had not abandoned or released its rights to this easement. Thus one necessary prerequisite to abandonment was lacking." 36 Ill. Ct. Cl. at 118.

The Court adopted the Department of Transportation's position that the State had a right of way for the use of the property for highway purposes until that right was released as it was possible that at some future date, it would be used.

From the evidence in the present case and relying on *Sass v. State, supra,* we cannot say that the Claimant has proven by a preponderance of the evidence that the Respondent had the intent to abandon the easement. In the present case, the vacation plat preparation was preliminary and not binding, trade talks were mere possibilities, and clearly less evidence of intent than the bill passed by the legislature in *Sass, supra.* Additionally, the vacation plat did not give up or release the entire easement. We must therefore decline to declare that the Respondent has abandoned the easement and we do find that the Respondent did not abandon the easement.

The second issue is whether the State has misused the easement and therefore is liable to the Claimant for money damages. The use to which an easement is devoted or for which it is granted determines its character, and its owners' rights are paramount to the extent for which it is necessary to carry out the purpose of the easement. (*Farmers Grain and Supply Co. of Warsaw v. Toledo P. & W. R.R.* (1942), 316 Ill. App. 116.) The reasonableness of an easement's use is a question of fact to be determined from the evidence. (*Ogelby v. Donaldson's*

*Floors, Inc.* (1958), 13 Ill. 2d 305.) Title to an easement in the case of a roadway over the land of another carries with it the right to do whatever is necessary for the reasonable use of the way for the purpose for which it was acquired. (*Sell v. Finke* (1920), 295 Ill. 470; *Keessen v. Zarattini* (1969), 119 Ill. App. 2d 284.) An easement for use as a right of way cannot be enlarged or extended by unauthorized acts. *Tripplett v. Beackman* (1976), 40 Ill. App. 3d 379; *Rinderer v. Keeven* (1980), 90 Ill. App. 3d 34.

In this case, it is without question that the easement was for highway purposes. There may be instances where parking on an easement is an allowable use. (*Delgado v. Wilson* (1989), 178 Ill. App. 3d 634.) However, the State, in violation of the terms of the easement in this case, leased part of Lot J to a neighboring motel for a parking lot. We find that such lease agreement was not an allowable use for this easement. If an easement is limited in purpose, the owner of the property is entitled to damages where the easement holder exceeds the purpose of the easement. (*LeClerg v. Zaia* (1975), 28 Ill. App. 3d 738.) The Respondent's leasing part of Lot J for a parking lot to an adjacent land owner exceeded the purpose of the easement and the State is liable to the Claimant for the rents received.

Beginning in July of 1977, the Respondent leased part of Lot J to the Best Inn Motel on a month-to-month basis at $50 per month until a time between April 29, 1981, and June 6, 1983. The rents collected amount to between $2,300 and $3,550. The railroad is entitled to an accounting of the rents to determine the actual amount collected by the State. Upon a determination of the amount of rents collected, that amount will be ordered paid to Claimant as and for its damages.

For the foregoing reasons, it is the order of the Court:

A. That Claimant's request for declaratory relief is denied as the State did not abandon its easement in Lot J.

B. That the Claimant has failed to prove by a preponderance of the evidence that the State abandoned Lot J.

C. That Claimant is entitled to an accounting of the actual amount of rents collected by the State from Best Inns for the rent of part of Lot J as a parking lot.

D. That the cause is remanded to the active docket of the Commissioner assigned to the case to determine the amount of rents collected by the State for Lot J and to report that amount to the Court.

E. That upon the determination of actual rents collected that amount will be awarded to Claimant as and for its damages for the misuse of the easement.

F. That all other or further damages or relief requested by Claimant is denied.

## ORDER

FREDERICK, J.

This cause comes before the Court on the Court's own motion, and the Court being fully advised in the premises, Wherefore, the Court finds:

1. That the Claimant, Toledo, Peoria & Western Railroad Company, no longer exists.

2. That its successor in interest apparently is the Atchison Topeka and Santa Fe Railway Company.

3. That no entry of appearance has been filed on behalf of the successor.

4. That there has been no activity in this cause for a long period except for a copy of a letter to the Commissioner being filed. The filing was on July 20, 1995.

5. The Court may dismiss a case for want of prosecution where the Court finds the Claimant has not made a good faith effort to proceed.

6. This is a 1981 case.

7. That Claimant has failed to make a good faith effort to prosecute its claim.

Therefore, this cause is dismissed for want of prosecution.