(No. 99-CC-2001—

ACE COFFEE BAR, INC., Claimant, *v.* THE UNIVERSITY OF ILLINOIS, Respondent.

*Opinion filed May 14, 1999.*

CALLAHAN, FITZPATRICK, LAKOMA & MCGLYNN (MICHAEL G. CONELLY, of counsel), for Claimant.

QUINLAN & CRISHAM, LTD. (MICHAEL I. ROTHSTEIN, of counsel), for Respondent.

## OPINION

EPSTEIN, J.

This claim for declaratory and injunctive relief against the University of Illinois is before the Court on the Respondent's section 2—619 motion to dismiss for want of subject matter jurisdiction and its section 2—615 motion to dismiss for failure to state a cause of action. Claimant has belatedly filed a response to part of the section 2—619 motion, which we allow *instanter*, but not to the section 2—615 motion. 735 ILCS 5/2—615, 2—619.

### Nature of the Claim

This claim arises out of a competitive bidding by the Respondent University for the vending food and beverage

services at, apparently, its Chicago campus. Claimant's complaint alleges that the Respondent issued a request for proposals ("RFP") in late 1997 that solicited competitive bids for a 5-year contract to provide those vending services, which was followed by a series of communications between University officials and prospective bidders in which the requirements and conditions of the solicited bids were discussed and the University is alleged to have made representations as to particular bid requirements (as to how commission rates could and could not vary for various components of the proposed contract). See pars. 4-10 of complaint.

Claimant alleges that the University improperly awarded the contract to a bidder that violated the bidding requirements (*id.*, par. 11), and asks for declaratory and injunctive relief—presumably at least partly in the alternative—to: (i) declare the winner's bid improper, declare all bids rejected, and clarify the RFP terms; (ii) enjoin the "enforcing" of the contract that was entered; (iii) order the Respondent to reconsider the bids that conformed to the RFP and to ascertain the best bid; and (iv) order a rebidding. *Id.*, prayer, at 4.

### The Section 2—619 Jurisdictional Motion

We necessarily take up the section 2—619 motion first, as it attacks this Court's jurisdiction, which is always the threshold inquiry. Respondent's motion in this case attacks both aspects of subject matter jurisdiction: (1) remedial jurisdiction, *i.e.*, the Court's authority or power to grant the relief requested, and (2) adjudicatory jurisdiction, *i.e.*, the Court's authority to decide a particular issue or claim. Specifically, Respondent asserts that this Court lacks authority to make declaratory judgments or to grant injunctions; and that we cannot adjudicate this claim under our contract jurisdiction (see section 8(b) of the Court

of Claims Act, 705 ILCS 505/8(b)) because there was no contract between the Claimant and the Respondent on which to predicate such jurisdiction.

Remedial Jurisdiction: Injunctions and Declarations

We need not detail the parties' arguments on our injunctive power, because this Court has firmly held that we have none. (*Garimella v. Board of Trustees of the University of Illinois* (1996), 50 Ill. Ct. Cl. 350.) Claimant's arguments and the decisions it cites were considered in *Garimella, supra*. Since our decision in *Garimella*, the General Assembly has not seen fit to enact a statute granting us injunctive power and the Supreme Court has not addressed the issue. We adhere to *Garimella*. This Court lacks authority to issue the injunctive orders requested in this case.

We reject, however, Respondent's contention that this Court lacks jurisdiction to make declarations of rights vis-a-vis the State. Although that authority is not spelled out explicitly in the Court of Claims Act, it is implicit in the statute's grant of authority to adjudicate—to "hear and determine" claims against the State (705 ILCS 505/8), and this Court has issued declarations with and without monetary awards since virtually the Court's creation in 1903 under several successive enabling Acts, and has previously upheld our declaratory jurisdiction. *See, e.g., Toledo, Peoria & Western R.R. Co. v. State* (1995), 48 Ill. Ct. Cl. 25, 27, and cases cited therein.

We observe that there are cases where a declaration by this Court—as the Court with the "exclusive jurisdiction" under the State Immunity Act (745 ILCS 5/1 *et seq.*) and under the Court of Claims Act—can be the *only* legal remedy for citizens who assert property and contract rights against the State. Such rights cannot ordinarily be enforced in the constitutional Courts, which are ousted of

jurisdiction by statutory sovereign immunity unless the *State* elects to initiate a suit there, which the State may or may not ever choose to do.

Even when the State does elect to sue in the Circuit Court, the defendant's right to countersue the State in that lawsuit remains limited by sovereign immunity. Even when the State opens the door to Circuit Court jurisdiction, sovereign immunity closes that courthouse door to the point where *only* "defensive counterclaims that are asserted for the purpose of defeating the state's action, and not for the purpose of obtaining an affirmative judgment against the state" are permissible. See *People ex rel. Manning v. Nickerson* (1998), 184 Ill. 2d 245, 249-250, 702 N.E.2d 1278, 1280, 234 Ill. Dec. 375, 377 (State's claim for injunction to remove building from State land and for damages for use of the property, defendant's counterclaim for quiet title and ejectment allowed as same issue, but tort counterclaims barred by sovereign immunity).

The *Nickerson* decision points out a significant category of cases where this Court's declaratory judgment authority is crucial. These are cases where a citizen disputes the State's title to real property, such as State easements and other defeasible or contingent interests in land. Without declaratory relief from this Court, a landowner or property Claimant may have no remedy at all to adjudicate their claimed rights. The ability to resolve legal title, which is critical to the free alienability of land and has been a fundamental precept of our English-American legal system for almost a thousand years, strongly militates for *some* Court to have jurisdiction to determine and declare legal ownership.

Although Illinois' sovereign immunity doctrine bifurcates jurisdiction between the constitutional Courts and this statutory Court, there is no apparent sovereign immunity reason to prohibit declaratory adjudications of

land ownership whenever the State claims to be in title, as long as it is done in the proper forum. Indeed, our Supreme Court has held that such title disputes *must* be decided by this Court (*Gordon v. Department of Transportation* (1983), 99 Ill. 2d 44, 457 N.E.2d 403, 75 Ill. Dec. 409; *see also, Sass v. Kramer* (1978), 72 Ill. 2d 485, 381 N.E.2d 975, 21 Ill. Dec. 528), which is inhibited if not prohibited if declaratory judgments are not allowed. And if allowed for that purpose, it is not obvious why they are impermissible for other kinds of claims that may also be "heard and determined" by this Court. Certainly the Court of Claims Act makes no such distinction.

We also observe that, although less common, disputes over personalty can also generate ownership claims in this Court. This Court has even decided the ownership of a submarine embedded in Illinois (albeit in submerged ground). *See, A & T Recovery, Inc. v. State* (1996), 48 Ill. Ct. Cl. 490.

While these considerations are not a basis for expanding the purely statutory jurisdiction of this Court beyond the bounds of the statutory language, they are a strong reason not to adopt a cramped view of our authority in cases that we are given the power to "hear and determine."

For all of these reasons, where the law grants this Court jurisdiction to "hear and determine" a matter (705 ILCS 505/8), and that matter will be "determined" by a declaration of rights, this Court cannot decline to decide the claim merely because a monetary award is not sought or does not then lie. This Court can grant declarations in appropriate cases. This conclusion leads us to the second half of Respondent's section 2—619 motion: whether we have jurisdiction to decide this particular claim.

Adjudicatory Jurisdiction

Respondent's section 2—619 motion contends that this claim does not fall within section 8(b) of the Court of Claims Act (705 ILCS 505/8(b)) (the "Act"), which is the sole jurisdictional basis asserted by this Claimant. (See par. 3 of complaint.) Section 8(b) is this Court's "contract" jurisdiction that authorizes us to adjudicate "claims against the State founded upon any contract entered into with the State of Illinois." The jurisdictional analysis of whether this Court is empowered to "hear and determine" this claim under section 8 of the Court of Claims Act is, therefore, whether this is a claim "founded upon" a contract of the University.

Respondent argues that there is no contract between the Respondent and the Claimant that might support this Court's jurisdiction, and vigorously contends that the RFP itself—which the University issued and to which the Claimant and others responded—is not itself a contract and creates no protectible property (contract) rights under applicable Illinois law, citing *Polyvend v. Pickorius* (1979), 77 Ill. 2d 287, 395 N.E.2d 1376, but is merely an invitation for the submission of contract offers *to* the bid solicitor, here the University, citing *Hassett Storage Warehouse, Inc. v. Board of Election Commissioners* (1st Dist. 1979), 69 Ill. App. 3d 972, 387 N.E.2d 785; *Premier Electric Construction Co. v. Board of Education of City of Chicago* (1st Dist. 1979), 70 Ill. App. 3d 866, 388 N.E.2d 1088.

We agree that under Illinois law the RFP is not itself a contract and that an RFP does not give rise to contract rights or even, under *Polyvend, supra*, to protective property rights for due process purposes. Thus, it is fairly clear that no contract claim in the ordinary sense of that term—*i.e.*, a claim sounding in contract, asserting rights

that arise by virtue of a contract—is or can be asserted on the basis of the RFP. That exhausts the arguments advanced to us and compels the conclusion that a section 8(b) contract claim is not presented here.

However, this straightforward contract claim analysis leaves one potentially dangling issue. Given the statutory language of section 8(b), we must ask whether this bid dispute can be said to be "founded upon" the one contract that is alleged in the complaint, *i.e.*, the contract awarded to the successful bidder that is challenged here on the ground that it was improperly awarded. Although it seems apparent that this dispute was triggered by the award of the contract, we conclude that that does not make this bid dispute a claim "founded upon" that contract. This claim is ultimately about the bid process, and only incidentally about the awarded contract. In reaching this conclusion, we make no categorical pronouncement on whether or not this Court's section 8(b) contract jurisdiction can extend beyond straightforward breach of contract and contract construction claims. The Court holds only that its section 8(b) jurisdiction does not reach this bidding dispute in which an unsuccessful bidder seeks to remedy an allegedly improper bidding process.

## Conclusion and Order

For the foregoing reasons, it is hereby ordered: This claim is dismissed for want of subject matter jurisdiction under section 8(b) of the Court of Claims Act.