(No. 56169.—

S. J. GROVES & SONS COMPANY, Appellee, v. THE STATE OF ILLINOIS, Appellant.

*Opinion filed November 18, 1982.—Rehearing denied January 28, 1983.*

Tyrone C. Fahner, Attorney General, of Springfield (Patricia Rosen, Assistant Attorney General, of Chicago, of counsel), for the People.

Thomas C. Clark and Theodore T. Davis, Corporate

Counsel, of Minneapolis, Minnesota, for appellee.

Mark H. Kruger, of Clayton, Missouri, for *amicus curiae* Pensoneau Excavating Co., Inc.

JUSTICE CLARK delivered the opinion of the court:

This action was brought by S. J. Groves & Sons Company against the State of Illinois in the circuit court of Peoria County on February 23, 1981, for an alleged breach of contract. The trial court granted a motion to dismiss filed by the State, finding that it lacked subject matter jurisdiction to entertain this action. An appeal was filed with the appellate court, where the decision of the circuit court was reversed (103 Ill. App. 3d 538). The appellate court held that the State, in entering into a contract for highway construction, consented to be sued on that contract. We granted the defendant's petition for leave to appeal (73 Ill. 2d R. 315(a)). We now reverse the appellate court and find that the circuit court properly dismissed the action.

Section 4 of article XIII of the 1970 Constitution abolished sovereign immunity. It provides: "Except as the General Assembly may provide by law, sovereign immunity in this State is abolished."

Pursuant to section 4 of article XIII the legislature enacted Public Act 77—1776 (Ill. Rev. Stat. 1979, ch. 127, par. 801), which provides that the State may not be made a defendant or a party in any court except as set forth in the Court of Claims Act (Ill. Rev. Stat. 1979, ch. 37, par. 439.1 *et seq.*). Public Act 77—1776 became effective on January 1, 1972, the same date section 4 of article XIII was to become effective (Ill. Const. 1970, Transition Schedule, sec. 1(e)). As this court said in *Sass v. Kramer* (1978), 72 Ill. 2d 485, the legislature, "acting under the authority of the 1970 Constitution, specifically prohibited making the State of Illinois a defendant or party in any court." 72 Ill. 2d 485, 490.

Section 8(b) of the Court of Claims Act (Ill. Rev. Stat. 1979, ch. 37, par. 439.8(b)) gives the Court of Claims exclusive jurisdiction over contract claims brought against the State of Illinois:

> "The court shall have exclusive jurisdiction to hear and determine the following matters:
>
> * * *
>
> (b) All claims against the state founded upon any contract entered into with the State of Illinois." Ill. Rev. Stat. 1979, ch. 37, par. 439.8(b).

The roots of sovereign immunity lie in the common law of England. The State of Illinois adopted the common law of England as it existed "prior to the fourth year of James the First." (Ill. Rev. Stat. 1979, ch. 1, par. 801). In early English common law no action could be maintained against the Crown. (11 Halsbury's Laws of England par. 1401, at 743 (4th ed. 1976).) And as the United States Supreme Court pointed out in *Feres v. United States* (1950), 340 U.S. 135, 139, 95 L. Ed. 152, 157, 71 S. Ct. 153, 156:

> "While the political theory that the King could do no wrong was repudiated in America, a legal doctrine derived from it that the Crown is immune from any suit to which it has not consented was invoked on behalf of the Republic and applied by our courts as vigorously as it had been on behalf of the Crown."

No suit could be brought against the King because no court could have jurisdiction over him. 1 W. Blackstone, Commentaries 242. The reasoning behind the sovereign being exempt from suit is that "there can be no legal right as against the authority that makes the law on which the right depends." (*Kawananakoa v. Polyblank* (1907), 205 U.S. 349, 353, 51 L. Ed. 834, 836, 27 S. Ct. 526, 527.) A petition of right developed for claims against the Crown as the sovereign began to assent to proceedings asserting legal or equitable rights in its own courts. (See 11 Halsbury's Laws of England par. 1411, at 747 (4th ed. 1976); 9 W. Holdsworth, A History of English Law 22 (1926).)

While the petition could not compel the sovereign to satisfy a debt (*Thomas v. Queen* (1874), L.R. 10 Q.B. 31), the Bankers case in 1699 ((K.B. 1699) 87 Eng. Rep. 500) allowed for the satisfaction of contractual debt through the petition. (Bankers deprived of their credit had been granted annuities by King Charles II under a covenant binding the King and his successors. Because the annuities were not being paid, the bankers sued by a petition of right for the debt owed them by the Crown.)

In the United States, sovereign immunity has been justified as a rule which embodies a policy that protects the State from interference in its performance of the functions of government and preserves its control over State coffers. Block, *Suits Against Government Officers and the Sovereign Immunity Doctrine,* 59 Harv. L. Rev. 1060, 1061 (1946).

Section 26 of article IV of the 1870 Illinois Constitution prevented the State from being subject to suit. Delegates to the constitutional convention expressed hesitancy at allowing the State to be exposed to an adversary proceeding in a court of law. (See 6 Record of Proceedings, Sixth Illinois Constitutional Convention 647 (hereinafter cited as Proceedings).) There was an expression among the delegates that an administrative hearing would protect the State against exaggerated claims while allowing for more flexibility than would be available under the rules of procedure in a court of law. See 6 Proceedings 647.

A Commission of Claims was created in 1877 to hear claims against the State (1877 Ill. Laws 64) with awards to be presented to the General Assembly for a final determination. The Act of 1877 was amended and expanded in 1889 and repealed by the Court of Claims Act of 1903 (1903 Ill. Laws 140).

The court had exclusive jurisdiction to hear claims against the State, and the legislature would only appropriate funds to pay awards in those cases where such a rec-

ommendation was issued by the Court of Claims. (1903 Ill. Laws 140-42.) The Court of Claims Act of 1917 repealed the previous act, substituted the Secretary of State for the Auditor of Public Accounts as *ex officio* secretary, but again gave the court exclusive jurisdiction to rule upon claims against the State. 1917 Ill. Laws 325-27.

In 1945 the legislature passed the Court of Claims Act of 1945; it was amended in 1951 and remained in a similar form until after the adoption of the 1970 Constitution. Its operation had been analogous to that of the court created by the 1903 act. See 6 Proceedings 647-59; Novoselsky and Peterson, *State Immunity in Illinois: The Court of Claims,* 15 De Paul L. Rev. 340 (1965).

The comments of the General Government Committee of the 1970 constitutional convention that proposed language abolishing sovereign immunity, except as provided by the legislature, are indicative of a clear intent to put aside an anachronistic doctrine (6 Proceedings 640) while leaving the legislature with the opportunity to establish the procedure for processing any claims against the State. 6 Proceedings 636.

The plaintiff correctly points out that in a growing number of other jurisdictions the doctrine of sovereign immunity has been held not to be applicable to contracts: South Carolina: *Kinsey Construction Co. v. South Carolina Department of Mental Health* (1978), 272 S.C. 168, 249 S.E.2d 900; North Carolina: *Smith v. State* (1976), 289 N.C. 303, 222 S.E.2d 412; Oklahoma: *State Board of Public Affairs v. Principal Funding Corp.* (Okla. 1975), 542 P.2d 503; Iowa: *Kersten Co. v. Department of Social Services* (Iowa 1973), 207 N.W.2d 117; Missouri: *V. S. DiCarlo Construction Co. v. State* (Mo. 1972), 485 S.W.2d 52; New Jersey: *P.T.L. Construction Co. v. Department of Transportation* (1972), 60 N.J. 308, 288 A.2d 574; Idaho: *Grant Construction Co. v. Burns* (1968), 92 Idaho 408, 443 P.2d 1005; Delaware: *George & Lynch, Inc. v. State* (Del. 1964),

197 A.2d 734; California: *Souza & McCue Construction Co. v. Superior Court* (1962), 57 Cal. 2d 508, 370 P.2d 338, 20 Cal. Rptr. 634; Colorado: *Ace Flying Service, Inc. v. Colorado Department of Agriculture* (1957), 136 Colo. 19, 314 P.2d 278; Montana: *Meens v. State Board of Education* (1954), 127 Mont. 515, 267 P.2d 981; Nebraska: *Todd v. Board of Educational Lands & Funds* (1951), 154 Neb. 606, 48 N.W.2d 706; Michigan: *Hersey Gravel Co. v. State* (1943), 305 Mich. 333, 9 N.W.2d 567; Georgia: *Regents v. Blanton* (1934), 49 Ga. App. 602, 176 S.E. 673; Indiana: *Carr v. State ex rel. DuCoetlosquet* (1891), 127 Ind. 204, 26 N.E. 778. The rationale behind many of those decisions is that when a State voluntarily enters into a contractual relationship, it impliedly consents to be sued on that contract. In none of those jurisdictions, however, was immunity provided for by the legislature pursuant to the kind of express language of section 4 of article XIII of the 1970 Illinois Constitution.

The plaintiff argues that the General Assembly, in authorizing the State to enter into contracts for the construction of highways (Ill. Rev. Stat. 1979, ch. 121, par. 4—201.4), is consenting to be sued on those contracts. The plaintiff contracted with the Department of Transportation for highway construction work that called for earthmoving, grading, clearing and paving on the part of the plaintiff. The language on which it relies is that giving the Department of Transportation the power to "enter into contracts covering all matters and things incident to the location, relocation, construction, repair and maintenance of State highways." Ill. Rev. Stat. 1979, ch. 121, par. 4—201.4.

The plaintiff is correct in asserting that both parties to a contract must be bound for the agreement to be a valid contract. While there must be mutuality of obligation between contracting parties (*Welsh v. Jakstas* (1948), 401 Ill. 288; *Allied Delivery System, Inc. v. Illinois Commerce Com.* (1981), 93 Ill. App. 3d 656, 665; see also *Carter v.*

*Kaskaskia Community Action Agency* (1974), 24 Ill. App. 3d 1056, 1059), it is only required to the extent that " 'both parties to an agreement are bound or neither is bound.' " (*Kraftco Corp. v. Koblus* (1971), 1 Ill. App. 3d 635, 638, quoting from 12 Ill. L. & Prac. *Contracts* sec. 7 (1955).) If the requirement of consideration has been met "mutuality of obligation is not essential." *Armstrong Paint & Varnish Works v. Continental Can Co.* (1921), 301 Ill. 102, 108. See Restatement (Second) of Contracts sec. 79 (1981).

The appellate court in *Garber v. Harris Trust & Savings Bank* realized that "where there is no other consideration for a contract, the mutual promises of the parties constitute the consideration, and these promises must be binding on both parties or the contract fails for want of consideration." (*Garber v. Harris Trust & Savings Bank* (1982), 104 Ill. App. 3d 675, 680.) There is, however, no requirement that parties to a contract have mutual remedies in the event of a breach. (5 A. Corbin, Contracts sec. 1179 (1964); Restatement (Second) of Contracts sec. 363, comment *c* (1981).) Because the State is obligated under a contract it signed does not mean that a remedy to institute a suit in a circuit court for a breach is implied.

Consent to be sued cannot be implied when there is an express statutory provision to the contrary. Whether the State is liable on a particular contract is a different question from whether the State is immune from being sued by an aggrieved party on that contract. It has been recognized that "[t]he rights and responsibilities of a state under an ordinary business contract are, with few exceptions, the same as those of individuals. Although it cannot be sued without its consent, the state, when making a contract with an individual, is liable for a breach of its agreement in like manner as an individual contractor. And while it may refuse to respond in damages, and leave a claimant without any remedy, as it may refuse to pay its bonds, the obli-

gation remains." (72 Am. Jur. 2d *States, Territories, and Dependencies* sec. 88 (1974).) We agree with the defendant that the absence of a remedy that would be available to a contracting party in instituting a suit in the circuit courts does not demonstrate that the State is not bound by its contracts. The contractual obligation remains; it is the remedy for any recovery on a claim that is limited.

The plaintiff argues persuasively as to why the State of Illinois should not be allowed to invoke the doctrine of sovereign immunity when a private party asserts that the State has breached a contract. It is in essence the legislature—the body called upon to fund any awards—that is deciding through the Court of Claims the merits of the claims before it. The Court of Claims Act effectively sees to it that, while the State can proceed in circuit court against a private party, when a private party wants to assert its contractual rights against the State, exclusive jurisdiction remains in the Court of Claims.

We agree with the plaintiff that a State government should be required to observe the same rules of conduct that it requires of its citizens. But it is the legislature's task to codify public policy; we refrain from undertaking such impermissible judicial legislation. See *People v. Chambers* (1976), 66 Ill. 2d 36, 44; 72 Am. Jur. *States, Territories, and Dependencies* secs. 73, 91 (1974).

In 1978 the Pennsylvania Supreme Court abolished the doctrine of sovereign immunity in a Pennsylvania tort case. (*Mayle v. Pennsylvania Department of Highways* (1978), 479 Pa. 384, 388 A.2d 709.) Article 1, section 11, of the Pennsylvania Constitution is similar to section 4 of article XIII of the Illinois Constitution in allowing suits brought against the State "in such manner as the legislature may by law direct." The majority of a sharply divided Pennsylvania Supreme Court held that article 1, section 11, did not preclude the court from abrogating the doctrine of sovereign immunity. The court said:

"[T]he historic arguments *** reflect obsolete legal thinking. ***

Once the 'errors of history, logic and policy' which underlie both sovereign immunity and the commonwealth's constitutional interpretation have been laid bare, we see no reason to perpetuate them." 479 Pa. 384, 399, 405, 388 A.2d 709, 716, 719.

While we acknowledge that there is no longer a King and agree that all of us, including the State, who enter into contracts should have an independent forum stand in judgment of contractual obligations, we see no reason for usurping a function of government that is not ours.

The language of Justice Pomeroy in his dissent from the holding that abrogated sovereign immunity by the Pennsylvania Supreme Court in *Mayle* epitomizes our reasoning here:

" 'When by their Constitution the people *** have expressly delegated to the legislative branch of government the task of determining in what manner and in what court and in what cases the Commonwealth may be subjected to suit ***, I fail to see how this Court can properly hold that it has a right to preempt this legislative function. A proposition that had its ancient origin in the common law of England and colonial America was elevated to constitutional status ***. To ignore this development would be to warp the plain meaning of the Constitution to suit societal ends which now *** the entire membership of this Court thinks are much to be desired. We may lament the legislative failure to correct before the present date an inequitable situation, but impatience should not cause us to upset the balance of power in our tripartite system of government by making the correction ourselves.' " (*Mayle v. Pennsylvania Department of Highways* (1978), 479 Pa. 384, 409, 388 A.2d 709, 721 (Pomeroy, J., dissenting), quoting from *Brown v. Commonwealth* (1973), 453 Pa. 566, 574-75, 305 A.2d 868, 873 (Pomeroy, J., concurring).)

It is not our province to take action to make the remedy more palatable for the aggrieved contracting party.

The plaintiff goes on to raise a number of other objections to the Court of Claims Act that plaintiff asserts rise to the level of violating both the United States and Illinois constitutions. However, the plaintiff prefaces its arguments with an admission that this court must first reach the conclusion that the State of Illinois can be sued in circuit court on a contractual claim by a private party. Having concluded that the State of Illinois cannot be sued on a contract in a circuit court, the thrust of the plaintiff's ancillary arguments is lost, since the foundation upon which they rest is missing.

Our most recent consideration of the Court of Claims Act was in *Seifert v. Standard Paving Co.* (1976), 64 Ill. 2d 109, where actions against the State, sounding in tort, were filed in the circuit court of Cook County alleging negligence on the part of agents or employees of the State. In upholding the dismissal of those complaints we found the Act does not violate the separation-of-powers provision of the Illinois Constitution; persons proceeding against the State are not entitled to a trial by jury, a right to appeal, or a right to subpoena or cross-examine witnesses. We believe that even though this action is in contract, those findings in *Seifert* are of equal force here.

If the inequities inherent in the doctrine of sovereign immunity are to be remedied, it is for the legislature and not this court to act. The complaint was properly dismissed.

*Appellate court reversed;*
*circuit court affirmed.*