(No. 95-CC-1913—

LALITHA GARIMELLA, Claimant, *v.* THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, Respondent.

*Order filed May 8, 1996.*

CHAWLA & ASSOCIATES (T. PAUL S. CHAWLA, of counsel), for Claimant.

JENNER & BLOCK (CARLA J. ROZYCKI, of counsel), for Respondent.

ORDER

PATCHETT, J.

This cause coming on to be heard on the Respondent's motion to dismiss verified complaint, and the Claimant's brief in support of claim for equitable relief, and the written responses of the parties thereto, a commissioner of this Court having conducted an evidentiary hearing, the Court having heard oral argument and being fully advised in the premises, the Court finds:

1. For the reasons hereinafter set forth, the Court grants in part the motion to dismiss, denies in part the motion to dismiss and denies the Claimant's request for equitable relief.

2. The critical issue in this case is whether the Court of Claims has jurisdiction to determine equitable claims. Our prior decisions could be interpreted as holding that we do not have such jurisdiction (e.g. see generally *National Railroad Passenger Corporation v. State* (1983), 36 Ill. Ct. Cl. 265, 266, 267; *New Life Development Corp. v. State* (1992), 45 Ill. Ct. Cl. 65, 89; *Gass v. State* (1990), 44 Ill. Ct. Cl. 186, 195-196). But see *Hicks v. State* (1978), 32 Ill. Ct. Cl. 529 where the Court stated:

"We believe that this Court does possess limited equitable powers including authority to enter an award reforming a deed. It must be remembered that such an award would still require some legislative action to carry out the award, and that in so holding, the Court does not imply that it has general equitable powers."

Decisions of the Supreme and Appellate courts are urged by Claimant as supporting the exercise of broad equitable powers, including the issuance of injunctions,

by this Court. See *Ellis v. Board of Governors of State Colleges and Universities* (1984), 102 Ill. 2d 387, 466 N.E.2d 202; *Management Association of Illinois, Inc. v. Board of Regents of Northern Illinois University* (1st Dist., 1993), 248 Ill. App. 3d 599, 618 N.E.2d 694; *Brucato v. Edgar* (1st Dist., 1984), 128 Ill. App. 3d 260, 470 N.E.2d 615; *Liebman v. Board of Governors of State Colleges and Universities* (1st Dist., 1979), 79 Ill. App. 3d 89, 398 N.E.2d 305; and *Sternberg v. Bond* (5th Dist., 1975), 30 Ill. App. 3d 874, 333 N.E.2d 261.

3. As stated by the Supreme Court in *Ellis, supra*, 466 N.E.2d at 206-207:

"It is clear that since we have decided that the Board is an arm of the State and must be sued in the Court of Claims, whether the plaintiff's cause of action sounds in tort, or in contract for breach of her employment contract, or is for a violation of section 8(3), the Court of Claims has exclusive jurisdiction. Section 8(a) states, 'All claims against the state founded upon any law of the State of Illinois ° ° °.' (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 37, par. 439.8(a).) Certainly, section 8(3) is a law of the State of Illinois. Section 8(b) would be applicable if plaintiff's suit were based on a breach of her employment contract. (See *S.J. Groves & Sons Co. v. State* (1982), 93 Ill. 2d 397, 67 Ill. Dec. 92, 444 N.E.2d 131.) And under section 8(d), a cause of action against the Board, sounding in tort, would come within the exclusive jurisdiction of the Court of Claims.

Because plaintiff seeks injunctive relief, in addition to money damages, does not mean, as plaintiff asserts, that her suit must be severed into two parts, that portion of the suit for money damages being brought in the Court of Claims and the other portion being brought in the circuit court. As the appellate court correctly noted, *Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 12 Ill. Dec. 600, 370 N.E.2d 223, stands for the proposition that if a plaintiff is not attempting to enforce a present claim against the State, but rather seeks to enjoin a State officer from taking future actions in excess of his delegated authority, then the immunity prohibition does not pertain. (68 Ill. 2d 540, 548, 12 Ill. Dec. 600, 370 N.E.2d 223.) However, we agree with the appellate court that the plaintiff's suit in the instant case is clearly based upon a present claim which has the potential to subject the State to liability and thus must be brought in the Court of Claims."

In *Ellis*, the plaintiff alleged that she had been constructively discharged without good cause and sought money damages and injunctive relief.

In *Management Association of Illinois, supra*, plaintiff, a not-for-profit corporation engaged in providing education and training services to companies brought suit against Northern Illinois University and six former employees of plaintiff who left plaintiff to work for the University. The action sought money damages and injunctive relief. The Appellate Court, 618 N.E.2d at 700, stated:

"The Court of Claims does have jurisdiction to grant injunctive relief. In *Fernandes v. Margolis* (1990), 201 Ill. App. 3d 47, 51, 146 Ill. Dec. 736, 558 N.E.2d 699, the court held that a claim of retaliatory discharge from state employment which sought injunctive relief in addition to damages was under the exclusive jurisdiction of the Court of Claims. In *Liebman v. Board of Governors of State Colleges and Universities* (1979), 79 Ill. App. 3d 89, 93, 34 Ill. Dec. 630, 398 N.E.2d 305, the court stated that the plaintiff's request for injunctive relief did not alter the basic nature of the complaint which was an action against the State based on a contract. Therefore, the Court of Claims had exclusive jurisdiction.

For the Court of Claims to have jurisdiction to grant an injunction, the injunction must either (1) control the operation of the State (*G.H. Sternberg & Co. v. Bond* (1975), 30 Ill. App. 3d 874, 877, 333 N.E.2d 261) (intent was to enjoin all members of state government including successor director who performed no wrongful acts), see also *Hudgens v. Dean*, 75 Ill. 2d at 357, 27 Ill. Dec. 193, 388 N.E.2d 1242 (injunction required affirmative act by State to rebuild road); or (2) involve a present claim against the State. In *Ellis v. Board of Governors of State Colleges and Universities* (1984), 102 Ill. 2d 387, 80 Ill. Dec. 750, 466 N.E.2d 202, a professor claimed she had been discharged without good cause from her tenured position at a State university. She sought damages and an injunction requiring the university to reinstate her. (*Ellis*, 102 Ill. 2d at 389, 80 Ill. Dec. 750, 466 N.E.2d 202.) The Court of Claims had exclusive jurisdiction: (quoting *Ellis*)."

We have never issued an injunction, and, notwithstanding the decisions set forth above, do not believe that the General Assembly ever intended that we would enjoin State agencies. Our decisions declining to exercise broad equitable powers have not evoked a legislative response to the contrary. In the absence of *specific* statutory provisions empowering us to issue injunctions we decline to do so.

4. Having determined that we do not have authority to grant the relief sought by Claimant, we deny the Claimant's request for equitable relief, and we dismiss counts I

(declaratory judgment and injunctive relief) and count II (specific performance).

5. Respondent has moved to dismiss the Claimant's five-count complaint on the additional grounds that (1) counts I, II, and III are premised on a breach of contract theory and that no contract is alleged or exists; (2) count IV alleges intentional infliction of emotional distress and must be dismissed for failure, within one year of the date of injury, to file a notice of intention to commence the action pursuant to 705 ILCS 505/22—1; and (3) count V should be dismissed for the reason that it seeks punitive damages against the Respondent and there is no authority for such damages. Respondent also urges that Claimant has failed to exhaust her administrative remedies.

6. A fair reading of the record in this case indicates that the Claimant proceeds on the theory that the contractual underpinning of this claim is not the curriculum requirements prescribed by the Committee on Student Promotions, but is the contractual relationship with the university from the date of admission through the last date of termination. We believe that at this stage of the proceeding the record supports the existence of a contractual relationship. (See generally, *Sternberg v. Chicago Medical School* (1977), 69 Ill. 2d 320.) The Claimant paid tuition, adhered to school requirements, and generally engaged in a course of conduct demonstrating consideration for the contract. This finding, however, does not preclude the Respondent from asserting the lack of such a relationship as a defense. We also find that Respondent's assertion that the proper authorities had not entered into such a contract to be without foundation since all of the practices, policies and procedures used in this case were the Respondent's.

7. Claimant was terminated from the program on July 30, 1993. Her complaint in this Court was filed on

January 10, 1995, more than one year after her termination. She never filed the notice of intent required by 705 ILCS 505/22—1. Even if we construed the filing of the complaint as satisfying the notice requirement, it was not done within the required time. Count IV will be dismissed.

8. We have previously expressly ruled on the question of whether we have the authority to award punitive damages. We do not. (See *Brown v. Southern Illinois University* (1994), 47 Ill. Ct. Cl. 336.) Count V will be stricken.

9. We find that the Claimant sufficiently exhausted her administrative remedies.

It is therefore ordered:

A. The Respondent's motion to dismiss is granted to the extent that counts I, II, IV and V are stricken.

B. In regards to count III, the motion to dismiss is denied.

SOMMER, C.J., CONCURRING.

Claimant, a former student at Respondent's College of Medicine, filed a claim seeking both equitable relief and damages as a result of her dismissal from the college. Claimant also filed concurrently therewith an emergency motion for temporary restraining order and preliminary injunction, and an evidentiary hearing on the motion was begun by Commissioner Sternik. However, as the result of motions to stay and dismiss filed by Respondent, the Commissioner thereafter suspended the hearing and requested that the parties brief the issue of whether the Court of Claims possesses equitable jurisdiction. The parties have thoroughly addressed that issue, and the Court has also heard oral arguments of the parties' counsel.

Prior to bringing her claim in this Court, Claimant had sought equitable relief from the Ciircuit Court of Cook County, but her case there was dismissed on the basis that the Court of Claims has exclusive jurisdiction over the matter. (See *e.g., Ellis v. Board of Governors of State Colleges and Universities* (1984), 102 Ill. 2d 387, 466 N.E.2d 202.) *Ellis* stands for the proposition that persons such as Claimant cannot avail themselves of the judicial courts of this State but that they instead must go to the Court of Claims for whatever relief might be able to be obtained here. Nothing in *Ellis*, however, indicates that the Court of Claims possesses so-called "equitable" jurisdiction. In fact, *Ellis* implies exactly the opposite, for Mr. Justice Simon lamented the unavailability of such relief from the Court of Claims:

"The Court of Claims only has authority to recommend that the legislature make an appropriation for an award of damages in this case. But damages do not sufficiently recompense the plaintiff for the injury alleged; they do not give her back her professorship. To allow Ellis the opportunity to obtain complete relief I would allow her to maintain her claim for reinstatement in the circuit court." 102 Ill. 2d at 397, 466 N.E.2d at 207.

A review of the status of sovereign immunity in Illinois confirms this reading of *Ellis*. The 1970 Illinois Constitution expressly left it to the legislature to regulate the nature and extent of sovereign immunity. Section 4 of Article XIII provides:

"*Except* as the General Assembly may provide by law, sovereign immunity in this State is abolished [emphasis added]."

Utilizing that authority, the legislature promptly passed the State Lawsuit Immunity Act, 745 ILCS 5/1:

"§1. Except as provided in the 'Illinois Public Labor Relations Act,' enacted by the 83rd General Assembly [5 ILCS 315/1 *et seq.*], or except as provided in 'AN ACT to create the Court of Claims, to prescribe its powers and duties, and to repeal AN ACT herein named,' filed July 17, 1945, as amended [705 ILCS 505/1 *et seq.*], the State of Illinois shall not be made a defendant or party in any court."

Section 8 of the Court of Claims Act (705 ILCS 505/8), strictly limits this Court's jurisdiction to specified "claims"

set forth therein. Although nominally referred to as a "court," the Court of Claims does not possess the jurisdictional attributes of a judicial court. (*Seifert v. Standard Paving Co.* (1976), 64 Ill. 2d 109, 122, 355 N.E.2d 537, 542.) Rather, the Court of Claims is a *legislative* court, an administrative arm of the General Assembly which exists to receive and process in an orderly manner "claims" for the various types of damages enumerated in section 8 of the Act. (*Id.*, 64 Ill. 2d at 123, 355 N.E.2d at 542.) As Mr. Justice Clark quite succinctly put it in an opinion issued approximately a year and a half prior to *Ellis*:

"It is in essence the legislature—the body called upon to fund any awards—that is deciding through the Court of Claims the merits of the claims before it." *S. J. Groves & Sons Co. v. State* (1982), 93 Ill. 2d 397, 405, 444 N.E.2d 131, 135.

The Court of Claims has clearly understood this limitation on its jurisdiction and, accordingly, has steadfastly refused to entertain the notion that it possesses any sort of equitable authority:

"The legislature has granted this Court authority to decide cases only in specific cases, and we must adhere to the limits imposed on us. This is a concession to the rule that the State, as a sovereign, cannot be sued. In deciding our cases, we must decide them within the authority granted to us regardless of any harshness involved. Were we authorized to consider equities, our holdings might be different in many cases, but we deem it beyond our authority to do so. The legislature has limited us in this regard." *National Railroad Passenger Corp. v. State* (1982), 36 Ill. Ct. Cl. 265, 266-67.

"[W]hile it would be easy to be sympathetic to Claimant's situation, there is a long line of cases which hold that Court of Claims jurisdiction does not encompass equitable remedies * * *. In this respect the Court of Claims differs from courts of general jurisdiction [i.e., judicial courts]. Persons dealing with the State are held to whatever terms the legislature may impose. The result of these limitations may be seen as harsh in some instances, but the legislature has not authorized the Court of Claims to act otherwise." *New Life Development Corp. v. State* (1992), 45 Ill. Ct. Cl. 65, 89.

Only the General Assembly has authority to confer equitable jurisdiction on this Court:

"No branch shall exercise powers properly belonging to another." (Ill. Const. 1970, Art. II, sec. 1.)

Certainly the General Assembly is well aware of this Court's myriad decisions and opinions commenting on the absence of equitable jurisdiction. Had the legislature desired to change the situation, it could have easily done so by expressly giving this Court such equitable jurisdiction. But it has not, and we cannot usurp the General Assembly's authority to prescribe our jurisdiction. Writing for a unanimous Supreme Court in *Groves*, Mr. Justice Clark provides us with a cogently stated reminder of why courts must adhere to their jurisdictional limitations:

"We agree with the plaintiff that a State government should be required to observe the same rules of conduct that it requires of its citizens. But it is the legislature's task to codify public policy; we refrain from undertaking such impermissible judicial legislation.

* * *

While we acknowledge that there is no longer a King and agree that all of us, including the State, * * * should have an independent forum * * * we see no reason for usurping a function of government that is not ours.

The language of [Pennsylvania Supreme Court] Justice Pomeroy * * * epitomizes our reasoning here: 'When by their Constitution the people * * * have expressly delegated to the legislative branch of government the task of determining in what manner and in what court and in what cases the Commonwealth may be subjected to suit * * *, I fail to see how this Court can properly hold that it has a right to preempt this legislative function. * * *. We may lament the legislative failure to correct before this date an inequitable situation, but impatience should not cause us to upset the balance of power in our tripartite system of government by making the correction ourselves. [Citations omitted.]' .

It is not our province to take action to make the [available] remed[ies] more palatable for the aggrieved [plaintiff]." 93 Ill. 2d at 405-406, 444 N.E.2d at 135.

Accordingly, Commissioner Sternik properly suspended the evidentiary hearing on Claimant's motion, for this Court does not possess subject matter jurisdiction to afford Claimant the requested equitable relief. Simply put, Claimant's action here is limited to a claim for damages, and she will be unable to obtain equitable relief of any sort.

EPSTEIN, J., CONCURRING.

I join in the Court's order on all counts. I concur with the majority that this Court lacks authority to issue

injunctions "in the absence of specific statutory provisions empowering us" to do so (Slip Op., at 1), and that we must reject this Claimant's plea—and all other Claimants' pleas—for injunctive relief. I write separately for four reasons.

First, the dismissal of the declaratory judgment portion of count I is not required by our lack of injunctive powers and is otherwise unexplained. I concur in the dismissal of the count I declaratory action as moot, in light of the count III breach of contract claim which we have upheld at this stage and which encompasses the issues in the count I declaratory claim.

Second, further analysis is required of the sovereign immunity injunction decisions of our constitutional courts that say or appear to say that the Court of Claims can issue injunctions. Contrary to the suggestion in Judge Raucci's dissent, those *dictums* do not foreclose our independent analysis and conclusion on the injunction issue. See Point 2, *post*.

Third, clarification is required because the majority has unnecessarily overstated the issue in this case, which may prompt an overly broad reading of the Court's decision. The majority states the issue as: "whether the Court of Claims has jurisdiction to determine equitable claims" (Slip Op., at 1). That is ambiguous and a misformulation of the narrow issue decided.

The sole issue decided in this case is our power to grant injunctive *remedies*. That is a distinct issue from our adjudicatory jurisdiction to "determine" various kinds of claims and issues. None of the opinions in this case hold that this Court cannot adjudicate an "equitable claim" in the sense of an equitable cause of action, *i.e.*, an action that derives from equity jurisprudence as distinguished than from those that derive from common law or from

statute. (This case does not even involve an "equitable claim" in this sense; the underlying claim is a legal action—breach of contract—which derives from the common law writ of assumpsit.)

This Court's statutory jurisdiction includes some equitable causes of action that we can adjudicate insofar as they give rise to relief within our narrow statutory authority: a monetary award, a declaration of rights, or a recommendation for relief to the General Assembly. This Court's inability to grant equitable remedies does not *per se* preclude jurisdiction to adjudicate equitable claims; and the language and legislative history of the Court of Claims Act and its predecessors reflects that "equitable jurisdiction" has never been categorically excluded from this Court's jurisdiction. In any event, that is not the import of the Court's decision in this case. See, Point 3, *post.*

Finally, I write to urge legislative review of the consequences of our decision, together with the recent sovereign immunity injunction decisions of our Supreme and Appellate Courts. The cumulative effect of these decisions is to preclude all, or almost all, claims for affirmative injunctive relief against the State in all Illinois courts, no matter how deserving the claims.

Claimants like this one, who seek reinstatement (or admission or retention) in State programs and, in another recurring example, Claimants who seek reinstatement in State employment after wrongful discharge, and other Claimants suffering ongoing injury to their personal or property rights at the hands of the State now have no Illinois court to which they can turn for affirmative relief. This is especially troubling in the case of disputes over property (*e.g.*, disputes between the State and a private party over ownership or possession of land), where a determination against the State may lack a means for judicial

enforcement of the private party's property rights in our Courts. This leaves *Claimants* to seek relief in the federal courts, when available, or to sue for damages that in some cases will be seriously inadequate to redress or cure the injury, or to go home without a day in Court.

This consequence of the statutory (formerly constitutional) doctrine of sovereign immunity deserves review by the elected policymakers. Whether this is a good or bad result, in whole or in part, whether or not it is in the State's interest to preclude affirmative injunctive relief in some or all situations, and whether this ultimately helps or hurts the State treasury are issues for the General Assembly to evaluate. See Point 4, *post*.

### 1.
### Remedial Powers of this Court

On the dominant issue in this case—whether we can grant injunctions—it is clear that the Court of Claims has always lacked authority to do so: this Court and its predecessors have never had constitutional status or power, and the General Assembly has never granted us any authority to issue injunctive orders. I agree with the majority and with Chief Judge Sommer's analysis that we cannot issue such orders without an express statutory authorization.

However, my conclusion—and I believe the Court's conclusion—on injunctions does not rest on their equitable character. The statutory analysis of this court's powers is applicable generally. Review of the Court of Claims Act, which defines our exclusive jurisdiction and remedial powers on claims against the State that are otherwise barred by sovereign immunity, also fails to disclose authority for this Court to issue many of the common law writs and their contemporary counterparts. For example, I find no authority for the Court of Claims to issue writs of *habeas corpus* to the Department of Corrections or anyone else.

Under all three Acts that have created and governed this court since 1903, our authority to provide a remedy for the various legal, equitable and statutory claims under our adjudicatory jurisdiction has been understood to be limited to: (1) making monetary awards from appropriated funds, (2) recommending payment and appropriation (or other relief) to the General Assembly, and (3) issuing declarations of rights (declaratory judgments). The Court's decision in this case properly adheres to that traditional and narrow statutory view.[1]

## 2.
### The Sovereign Immunity Options of the Supreme and Appellate Courts

In an unusual division of this Court, the majority almost disregards, and the dissenter concludes he must follow, a series of opinions of our Supreme and Appellate Courts that say or appear to say that this Court can issue injunctions. Although I side with the majority, the dissenting comments of Judge Raucci demonstrate that our decision rejecting injunctive power can be perceived, erroneously, as conflicting with those decisions. This deserves elaboration.

I disagree with Judge Raucci's hedged conclusions that our Supreme Court may have held, in *Ellis v. Board of Governors of State Colleges and Universities* (1984), 102 Ill. 2d 387, 466 N.E.2d 202, 80 Ill. Dec. 750, and that our Appellate Court did hold, in *Management Ass'n. of Illinois, Inc. v. Board of Regents of Northern Ill. Univ.* (1st Dist. 1993), 248 Ill. App. 3d 599, 618 N.E.2d 694, 188 Ill. Dec. 124, that this Court has authority to issue injunctions. Because I do not accept his view of those decisions,

---

[1] For completeness, I observe that the question of whether this court is authorized to grant various *statutory* remedies likely turns on the particular statutes involved, their legislative intent and possibly their interplay if any with the Court of Claims Act. My comments here intimate no views whatever on that subject.

I agree with the majority that this Court is obliged to make our own independent determination of our powers to issue injunctions. *Ellis* and *Management Association* do not foreclose our decision.

Similarly, I agree that we are not bound by the other appellate court opinions that, like *Management Association*, say unqualifiedly that the Court of Claims has authority to enjoin the State in cases in which sovereign immunity bars jurisdiction of our constitutional courts: *Fernandes v. Margolis* (3rd Dist. 1990), 201 Ill. App. 3d 47, 51, 146 Ill. Dec. 736, 558 N.E.2d 699; *Leibman v. Board of Governors of State Colleges and Universities* (1st Dist. 1979), 79 Ill. App. 3d 89, 34 Ill. Dec. 630, 398 N.E.2d 305; *Betts v. Department of Revenue* (1st Dist. 1979), 78 Ill. App. 3d 102, 33 Ill. Dec. 426, 396 N.E.2d 1150; *G.H. Sternberg & Co. v. Bond* (5th Dist. 1975), 30 Ill. App. 3d 874, 333 N.E.2d 261.

Our decision is consistent with the majority opinion in *Ellis, supra,* because the Supreme Court majority did *not* hold that the Court of Claims has injunctive power nor did it review our statutory powers. *Ellis* held only that the constitutional courts *lacked* jurisdiction over the injunction claim in that case due to sovereign immunity. Moreover, the *Ellis* majority did not base its jurisdictional holding on the premise that this *Court* could provide the requested injunction. As Judge Sommer correctly observes, both the majority opinion and Justice Simon's dissent in *Ellis* may be read to suggest that there may be no injunctive remedy at all for the Claimant in that case, as we have held there is not for this Claimant.

Although I appreciate Judge Raucci's deferential view of the appellate decisions, especially *Management Association, supra,* I do not believe they carry weight on the issue of this Court's authority. The appellate pronouncements in

the cited cases were *obiter dictum*. Those courts' statements range from assumptions about this Court's powers to misplaced reliance on the majority opinion in *Ellis, supra*, or on each other. But none of those Appellate Court pronouncements on this Court's authority is a holding on an issue that was actually presented there for decision. Most important, none of those opinions identified any constitutional, statutory or other source of authority for this Court to issue injunctive remedies. Those decisions, like *Ellis, supra*, stand only for the proposition that sovereign immunity barred the constitutional courts from issuing the injunctions against the State that were requested in those cases. That is entirely consistent with our parallel decision here which denies injunctive relief in this court, albeit for another reason.

Two further points must be made about the notion, seemingly accepted by Judge Raucci, that the constitutional courts could conclude that the Court of Claims has injunctive powers.

First, Judge Raucci makes a statutory point, with which I agree, that the legislature meant "all claims" when it repeatedly said "all claims" in section 8 of the Court of Claims Act that establishes our exclusive jurisdiction. I also agree that that language precludes the kind of law/equity distinctions that some would try to read into our statutory jurisdiction to "hear and determine" the types of claims specified in our Act. 705 ILCS 505/8, "Jurisdiction."

But I do not agree that the statutory delegation of authority to "hear and determine" various categories of claims encompasses (or implies) the power to grant remedies that are nowhere mentioned in the statute. I am unaware of judicial authority requiring or suggesting a broader construction. Moreover, in construing an Illinois jurisdictional statute in light of our constitution's vesting of "the judicial power" in our "Supreme Court, an Appellate Court and

Circuit Courts" under Article VI (1970 Ill. Const., Art. VI, section 1), it would be improper at best to imply any judicial powers that are not expressly granted by the legislature.[2]

Second, I find no authority in our Constitution or in common law precedent that might provide the Supreme Court or the Appellate Court with the power to delegate to us equitable powers, and those courts have not sought to do so in any event.

For these two reasons—the absence of statutorily delegated authority and the absence of judicially delegable authority—and because of my strict constructionist view of this issue, I cannot share Judge Raucci's view that the Supreme Court or the Appellate Court could have held, or that their opinions may be read to hold, that we have injunctive powers. There is just no source of such power under current law.

### 3.
### Equitable Jurisdiction Generally

With some exclusions that result from particular provisions of our Act, the Court of Claims has general jurisdiction to adjudicate "equitable" causes of action as much as any other actions that lie without our section 8 jurisdictional grant. (705 ILCS 505/8.) Our inability to grant equitable remedies does not, by itself, preclude jurisdiction to adjudicate equitable claims and defenses. (However, if an equitable remedy were the *sole* relief available for an equitable action, the underlying action would arguably be moot in this Court.) Our focus necessarily is those equitable claims that can give rise to damages and declaratory judgments, *i.e.,* where this Court can grant some form of

---

[2] I have little doubt that in the area covered by sovereign immunity, at least, the General Assembly could grant such judicial powers to a statutory court like this one under its Article XIII, Section 4 powers.

relief. "Equitable claims" involved in this analysis include, for example, promissory and equitable estoppel, quiet title, quasi-contract and restitution.

The primary statute, of course, is section 8 of the Court of Claims Act (705 ILCS 505/8), which is our exclusive jurisdiction statute. In its most general and broadly applicable provisions, section 8 grants this Court exclusive jurisdiction "[t]o hear and determine * * *":

"(a) *All claims* against the state founded upon any law of the State of Illinois, or upon any regulation thereunder * * *.

(b) *All claims* against the state founded upon any contract entered into with the State of Illinois.

* * *

(d) *All claims* against the State for damages in cases sounding in tort, if a like cause of action would lie against a private person or corporation in a civil suit * * *." 705 ILCS 505/8.[3]

I agree with Judge Raucci that this statutory "all claims" language must be given its plain and ordinary meaning: that "all" means all and does not mean some and that, in the absence of legislative history to the contrary, we must conclude that the General Assembly did not utilize the expression "all claims" to mean "all claims except equitable claims."

Moreover, in light of the General Assembly's practice of engrafting exclusions to our jurisdiction in the section 8 language itself (*see* section 8(a), for example; *see Ardt v. State of Illinois and Dept. of Professional Regulation* (1996), 48 Ill. Ct. Cl. 429), the absence of an exclusion for equitable claims must be taken as an intentional omission.

[3] In this and succeeding excerpts from the statutory grants of jurisdiction in this opinion, the provisions relating to jurisdiction over the State universities and the provisions granting narrow, specialized jurisdictions (e.g., adjudications under the Crime Victims Compensation Act, provided in section 8(g) of the current Act) are excluded, because they are not relevant to the question of the scope of the Court of Claims' underlying jurisdiction to adjudicate general claims against the State.

Similarly, looking at the tort jurisdiction provision of section 8(d), two limitations are noteworthy. First, this Court's tort jurisdiction is expressly limited to "damages." That limitation would be unnecessary and redundant if our underlying jurisdiction already excluded equity claims. Second, section 8(d) expressly restricts our tort jurisdiction to actions that "would lie against a private person or corporation in a civil suit." That language includes both legal and equitable claims. This is confirmed by the legislative history. That restriction formerly read:

"(d) All claims against the State for damage in cases sounding in tort, in respect of which claims the claimant would be entitled to redress against the State of Illinois, *at law or in chancery*, if the State were suable * * *." 705 ILCS 505/8(d).

The legislative change from "at law or in chancery" to the current "civil suit" language was enacted in 1971 by P.A. 77-953, which was one of a long series of amendatory acts that followed the adoption of the 1970 Constitution to conform statutory language to the terminology of the new constitution. Public Act 77-953 was an amendment that conformed statutory language to the Judicial Article of the 1970 Constitution. Thus the elimination of the words "law or * * * chancery" in favor of "civil" was a nomenclature change, not a substantive change, and confirms that the present language encompasses both legal and equitable claims, as does "civil" under the 1970 Judicial Article.

The Court of Claims historically has had jurisdiction over equitable claims under each of its three statutory incarnations: the Acts of 1903 and 1917 and the current 1945 Act. (This Court's predecessor agency, the Claims Commission, also had jurisdiction over equitable claims under the Acts of 1877 and 1891.) The legislative prescriptions of the former Commission's jurisdiction, and of the former and present Court of Claims' jurisdiction bear review:

*The 1877 Statute* (jurisdiction of the Claims Commission, emphasis added):

"to hear and determine all unadjusted claims of all persons, against the State of Illinois * * * *according to the principles of equity and justice* except as otherwise provided in the Laws of this State."

*The 1889 Statute* (amended jurisdiction of the Claims Commission; also applicable to the original Court of Claims created in 1903, emphasis added):

"1. All unadjusted claims founded upon any law of the state, or upon any contract, expressed or implied.

2. All claims which might be referred to it by either house of the general assembly.

3. Claims for taking or damaging property by the state for public purposes.

4. All unadjusted and controverted claims against state penal, educational, charitable, and military institutions.

5. All setoffs, counter claims, and claims for damages, whether liquidated or unliquidated.

6. All other unadjusted claims *of whatsoever nature or character* against the State of Illinois."

*The 1917 Act* (the second Court of Claims Act, emphasis added):

"* * * to hear and determine all claims and demands, *legal and equitable*, liquidated and unliquidated, *ex contractu* and *ex delicto*, which the State as a sovereign commonwealth, should, *in equity and good conscience*, discharge and pay."

*The 1945 Act* (the third and present Court of Claims Act, as originally enacted):

"A. *All claims* against the state founded upon any law of the State of Illinois, or upon any regulation thereunder * * *.

B. *All claims* against the state founded upon any contract entered into with the State of Illinois.

C. *All claims* against the State for damage in cases sounding in tort, in respect of which claims the claimant would be entitled to redress against the State of Illinois, at law or in chancery, if the State were suable * * *.

D. *All claims* against the State for personal injuries or death arising out of and in the course of the employment of any State employee * * * in accordance with the substantive provisions of the Workmen's Compensation Act or the Workmen's Occupational Diseases Act * * *."

*1996 Statute* (The general provisions of the 1945 Court of Claims Act, as amended to date, is set forth above):

This legislative language, which extends over the course of more than a century, shows affirmatively that equitable claims and defenses were contemplated and included in the jurisdiction of this Court from the outset. In almost 120 years of legislative history, there is no hint to be found of any categorical exclusion of equity jurisprudence generally, or of equitable claims in particular, in any of the formulations of this Court's jurisdiction.

In the context of this legislative history, it is even clearer that "all claims" in section 8 of the Court of Claims Act still includes the equitable claims that had been explicitly included in earlier formulations of this Court's and its predecessor's jurisdiction.

Nevertheless, as the majority correctly observes, the caselaw of this Court is not altogether consistent on the subject of our general jurisdiction to entertain and decide equitable claims and defenses. There is a body of caselaw to the effect that this Court lacks jurisdiction to entertain or adjudicate claims predicated on equitable rather than legal actions, or to entertain defenses based on equitable principles. Our precedents paint a mixed picture of this Court's application of equity jurisprudence in practice.

However, many of our decisions declining relief or refusing to entertain equitable claims or defenses are compelled by specific statutory restrictions on this Court, rather than by a general lack of jurisdiction over equitable claims or defenses. For example, this Court has consistently rejected claims based on the equitable doctrines of *quasi*-contract or implied contract. (See, *e.g.*, *Brighton Building Maintenance Co. v. State* (1982), 36 Ill. Ct. Cl. 36.) However, our rejection of those claims is required by our limited jurisdiction over contract claims under section

8(b) of our Act, which we have consistently read as limited to contract claims based on *express* contracts entered by the State which excludes all kinds of implied contracts including the equitable doctrines, but does not exclude third-party beneficiary contract claims. *Haendel v. State*, 50 Ill. Ct. Cl. 224.

There may well be other provisions of our statute that may additionally preclude application of equitable principles in various circumstances, but that does not detract from our threshold jurisdiction over equity jurisprudence.

I submit that there is little sense or justice in rejecting out of hand State liability—or State defenses—that derive historically from English chancery rather than the law courts of England. The legislature has not commanded us to do so. To the contrary, it appears that our legislature has been directing us to apply equity as well as legal principals. In the long run, application of equity in this Court, where such does not run afoul of our specific statutory limitations, should do little to alter the overall liability of the State but should in many individual cases result in better justice for both Claimants and the State. After all, that is why equity jurisprudence came to supplement the law courts long ago in England, and why equity jurisprudence was adopted by American courts along with the common law. The Illinois Court of Claims should do likewise.

### 4.
### Implications of our Decision
### Rejecting Injunctive Power

The consequences of today's decision must be emphasized. Under our decision today, this Claimant cannot present her claim for reinstatement to this Court. Under Illinois sovereign immunity law as articulated by our Supreme Court, it is clear that all other Illinois courts

also lack jurisdiction over this Claimant's reinstatement claim. Thus this Claimant—and similarly situated Claimants having legitimate pleas for mandatory injunctive redress—have no Illinois court to which they can turn for a remedy. Quite possibly they have no remedy at all, at least not an effective injunctive remedy.

Under our Supreme Court's prevailing test of sovereign immunity, injunction actions against the State no longer can be maintained in our constitutional courts—even when brought nominally against a State officer or agency director—when the claim is "a present claim which has the potential to subject the State to liability." (*Ellis v. Board of Governors of State Colleges and Universities* (1984), 102 Ill. 2d 387, 466 N.E.2d 202, 207, 80 Ill. Dec. 750, 755.) That principle seemingly bars most, if not all, mandatory injunctions—orders that direct and compel the doing of some affirmative act.

When our decision today is grafted onto *Ellis* and its progeny, the result is that no Illinois court can entertain an injunction plea or can order redress that "has the potential" to cost the State money. This seemingly bars all or almost all mandatory injunctions, and may well bar many prohibitory injunctions as well, but it clearly prohibits employment and State program reinstatement claims like this case and *Ellis*. Those injunctive claims, at least, now have no place to go in Illinois.

This result, of course, is part and parcel of sovereign immunity, which the legislature has seen fit to reinstate in full measure under the 1970 Constitution. The current 1970 Illinois Constitution leaves the issue of sovereign immunity to the General Assembly (Art. XIII, section 4), thus deconstitutionalizing this doctrine which had been established directly by the 1870 Constitution. Illinois statutorily re-adopted the identical sovereign immunity

formulation of the 1870 Constitution: An Act in relation to immunity for the State of Illinois. 745 ILCS 5/1, *et seq*.

In this case, we apply the statutory sovereign immunity as a complete shield against mandatory injunctions. We must recognize, of course, that the injustice occasioned, from time to time, to a deserving citizen by the unavailability of such injunctive relief against the State is not nearly as harsh as having no remedy at all for State-caused injuries, as pure sovereign immunity would require. The injustice of not being able to stop or prevent a wrong is ameliorated by the availability of damage awards to compensate for injuries suffered at the hands of the State. Under our law such damages are almost always available to deserving Claimants.

Still, there are cases where recoverable damages are inadequate to remedy the injury, as could possibly happen in this case. In such instances, by retaining the State's sovereign immunity shield against injunctions, Illinois denies full redress to deserving Claimants who have been or are being injured by the State. This is arguably inconsistent with Illinois' tradition as a state that favors redress for its citizens as well as with our often ignored constitutional principle that

"Every person shall find a certain remedy in the laws for all injuries and wrongs which he receives to his person, privacy, property or reputation. He shall obtain justice by law, freely, completely and promptly." Ill. Const. 1970, Art. I, sec. 12.

Now that we have shut the final Illinois door on these kinds of injunction claims, this issue should be reviewed by the General Assembly, which ultimately determines whether and where and how various kinds of claims against the State should be adjudicated and remedied. This is a legislative issue. But it is one that has not been publicly revisited in recent times.

There is a debatable question as to whether some Illinois court in at least some situations ought to be able to provide this kind of affirmative injunctive relief to Claimants. Whether the State treasury—the intended beneficiary of the doctrine of sovereign immunity—will be well or ill served in the long run by the absence of such injunctive remedies under the reinvigorated sovereign immunity doctrine is at least debatable. In terms of both State liability and justice to Illinois Claimants, therefore, there are legitimate questions as to the State's ultimate interests. These involve analyses and judgments that ought to be made by the General Assembly, and which deserve thoughtful consideration by the elected policymakers.

This opinion does not advocate any particular legislative change. Nor do I suggest that this Court is the proper forum, or even a suitable forum, in which to litigate any kind of injunctions against the State. I will, however, note my own view, which I expect is shared by many of my colleagues, that the Court of Claims is now underequipped to handle injunction claims throughout Illinois—especially emergency injunction demands—against the many departments, agencies, officers and bureaus of our State government. Whether this Court is, or ever would be, an appropriate forum or the most suitable forum to hear injunction claims against the State, if such suits are ever permitted, is an open question.

In this regard, it is an interesting and often overlooked historical fact that in the early years of Illinois' statehood, from 1818 to 1870, claims against the State were justiciable in the circuit courts. (See Laws of Illinois, 1819, at 184; Revised Code of Laws of Illinois, 1829, at 171; Revised Statutes of Illinois, 1845, at 394, 464.) Under the 1818 and 1848 constitutions, sovereign immunity was not even the law of Illinois. The 1870 Constitution

first adopted the doctrine of sovereign immunity in Illinois and barred the constitutional courts from exercising any jurisdiction over the State, which therefore had been permitted. Ill. Const. 1870, Art. IV, Sec. 26. See generally, Spiegel, *The Illinois Court of Claims: A Study of State Liability* (U. of Illinois Press 1962), Ch. 3, at 60.

Under the 1970 Illinois Constitution, the General Assembly has the prerogative of altering or reducing sovereign immunity, and arguably may have the authority to allocate jurisdiction over different kinds of claims that are subject to sovereign immunity to whichever court or courts or administrative agencies or other tribunals as it may select. There are a host of alternative solutions for various kinds of cases from which the legislature might pick and choose. I only suggest that it is timely for legislative reconsideration of this difficult and complex but important question that seriously affects the administration of civil justice in Illinois, and that the General Assembly has many options it may choose if it determines to act on this issue.

RAUCCI, J., CONCURRING IN PART AND DISSENTING IN PART

I concur with that part of the majority's order dismissing counts IV and V, and denying the motion to dismiss as to count III. I respectfully dissent from that portion of the order which holds that the Court of Claims does not have the authority to grant injunctive relief, and dismisses counts I and II.

My reading of *Ellis v. Board of Governors of State Colleges and Universities* (1984), 102 Ill. 2d 387, 466 N.E.2d 202; *Management Association of Illinois, Inc. v. Board of Regents of Northern Illinois University* (1st Dist., 1993), 248 Ill. App. 3d 599, 618 N.E.2d 694; *Brucato v. Edgar* (1st Dist., 1984), 128 Ill. App. 3d 260, 470 N.E.2d 615; *Liebman v. Board of Governors of State Colleges and*

*Universities* (1st Dist., 1979), 79 Ill. App. 3d 89, 398 N.E.2d 305; and *Sternberg v. Bond* (5th Dist., 1975), 30 Ill. App. 3d 874, 333 N.E.2d 261, leads me to the conclusion that the law of this State is that the Court of Claims has authority to grant some forms of equitable relief. I will not repeat the extended quotations from these cases contained in the majority opinion, however I note that while *Ellis* does not completely close the door on the issue, the Appellate Court has expressly done so in *Management Association of Illinois, supra,* where the Court stated, "The Court of Claims does have jurisdiction to grant injunctive relief." 618 N.E.2d at 700.

The holding of the Appellate Court is supported by a reading of the Court of Claims Act (705 ILCS 505/1, *et seq.*). In that Act, the General Assembly has provided:

"The court shall have exclusive jurisdiction to hear and determine the following matters:

(a) All claims against the State founded upon any law of the State of Illinois, or any regulation thereunder by an executive or administrative officer or agency, other than claims arising under the Workmen's Compensation Act or the Workmen's Occupational Diseases Act, or claims for expenses in civil litigation * * *.

(b) All claims against the State founded upon any contract entered into with the State of Illinois." 705 ILCS 505/8.

I believe that when the General Assembly said "all claims" it meant "all claims." The claims presented are founded in university regulations, promulgated pursuant to law, and in the contract between the university and the Claimant.

In reaching the position that I do, I recognize that, while we are part of the legislative branch of government, we are bound to follow decisions of the Supreme and Appellate Courts of this State.

I am well aware of the practical obstacles which make difficult the effective and efficient disposition of requests for injunctive relief from the Court of Claims. And I am not at all certain of our ability to enforce any such order.

But I do believe that the decisions cited above make our responsibility clear.

An examination of the facts in this case demonstrates that Claimant would be entitled to equitable relief.

The complaint alleges that Claimant first enrolled in the University of Illinois at Chicago–College of Medicine (UICCOM) in August, 1990, but failed to meet the academic requirements during the 1990-91 academic year. She repeated the first year during the 1991-92 academic year, but again failed to meet the minimum pass levels and was dropped from the medical school in January, 1992. Claimant successfully petitioned for readmission in August, 1992. On December 16, 1992, Claimant was advised that she was being dropped from the medical school for poor scholarship. However, effective January 22, 1993, the Committee on Student Promotions recommended and approved specific curriculum requirements for Claimant. Those curriculum requirements specifically outlined which courses Claimant was to take (and when), and which she was not to take. One condition was that she was not to take the preventive medicine and health examination during academic year 1992-1993.

Claimant successfully completed the course work for the academic year 1992-93 in May of 1993. She then sat for the first component of a three-part examination (preventive medicine) in preventative medicine and health in June, 1993 during the 1993 summer makeup examination period. Ironically, UICCOM's policy dictates that permission be obtained from the Office of Academic Student Affairs prior to taking the examination. Claimant received such permission. The Respondent's position is that by sitting for this examination she violated the curriculum requirements. For that reason, on July 30, 1993, the Committee on Student Promotions dropped Claimant from UICCOM.

Claimant urges that the Respondent has incorrectly interpreted the definition of academic year 1992-93. She urges that academic year 1991-92 ended with the "last day of final examinations of the spring semester or quarter." Her position is supported by Dr. Thomas Henderson who was appointed by Dr. Gerald Moss, Dean of UICCOM, as the grievance officer to consider the Claimant's grievance. He reported to Dr. Moss as follows:

"The issue to be resolved revolves around this interpretation of the time period described by the phrase "Academic Year 1992-1993." No matter what the intent of CSP (Committee on Student Promotions) may have been in January, 1993, there is no specific time frame given for Academic Year 1992-1993. The usual interpretation of the time encompassed by an academic year refers to the time beginning with the first day of classes of the Fall Semester or Quarter and continuing through the last day of final examinations of the Spring Semester or Quarter. Using the official calendar of the University of Illinois at Chicago for Academic Year 1992-1993, the period in question was August 24, 1992 to May 8, 1993. As another example of the time period to be considered an academic year, faculty members at the University of Illinois on academic year appointments (i.e. AY contracts) are required to render services to the University for the Fall and Spring Semesters and are paid for nine months service.

With respect to student status, in my experience, once a student has successfully completed the academic requirements for a given academic year (as described above), the student is generally able to take courses required for the next academic year during the summer, if appropriate courses are available. Indeed, even in the College of Medicine, students who have completed their M-2 requirements in May of a given year are allowed to begin taking M-3 clerkships approximately two weeks after sitting for the USMLE: Step 1 examination in June, rather than being required to wait until late August to begin these activities."

## Dr. Henderson determined that

"Lalitha Garimella was dropped from the College of Medicine because of an overly zealous interpretation of the "curriculum requirements.""

He recommended that Claimant be reinstated effective with the beginning of the fall semester, 1994. Ignoring Dr. Henderson's findings, Dr. Moss replaced him with Dr. Edward Cohen who confirmed the dismissal. This action was taken notwithstanding the fact that the grievance procedures contain no provision for ignoring the recommendation, or for replacing the grievance officer.

I would find that the Claimant's dismissal for the reason that she took the preventive medicine examination during the summer of 1993 to be arbitrary and capricious, and contrary to law.

The majority's action today leaves the Claimant with a wisp of a remedy if any remedy at all. Since the Claimant will be denied the ability to attempt to complete her education, she will be limited to her breach of contract claim. While the record casts doubt on her ability to successfully complete the medical program, the likelihood is that any damages for termination from the program will be held to be speculative. She will have no adequate remedy for the wrong done to her.

I would deny the motion to dismiss counts I and II.